Bertie Lee Robinson, Administrator of Estate of James Robinson, Deceased, Plaintiff-Appellee, v. William F. Workman, Defendant-Appellant.

Gen. No. 10,014.

Third District.
September 21, 1955.
Rehearing denied October 7, 1955.
Released for publication October 7, 1955.

■■■■■■■■■■■■■■■■■■■

George P. Proctor, of Lewistown, for appellant.

Ezra J. Clark, and James F. Scott, both of Canton, for appellee.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

■ This case grows out of a collision between the automobile in which William F. Workman and James Robinson were riding, and one driven by Karolyn Woodcock, on the evening of November 4th, 1953. The accident occurred on Illinois Highway No. 9, at a point about two miles east of Canton, Illinois. The weather conditions were good and the pavement was dry. The time was about 5:30 p. m. and the lights of cars on the highway were on. In the collision, James Robinson was killed. Other than the people involved, no one saw the actual collision and it was stipulated that the driver of the other car, Karolyn Woodcock, if called as a witness would testify that she remembered nothing about it, immediately prior to or at the time of the accident. There was no direct testimony as to who was driving the defendant's car. The evidence shows there were only two persons in the defendant's car, the deceased, James Robinson, and the defendant. The defendant, of course, was not competent to testify as to which one of them was driving. After the accident, the defendant's car was overturned and witnesses who arrived at the scene of the accident before the people were moved, testified generally, that Robinson was near the front of the car and the defendant was in back of him, that is, to the rear of the car. There was testimony that one shoe was found wedged between the accelerator and the transmission case of the Workman car. It is not clear whether or not this shoe belonged to Workman, but there is some evidence that Workman did not have a shoe on either foot immediately after the accident. Workman was injured about the left heel, was cut just below the chin, had some loosened teeth and was bleeding about the ears. Workman complained of pain in his back, but there were no outward evidences of wounds to the back. Robinson was badly cut about the

45

head and face and one knee was badly scratched. Just what caused Robinson's death does not appear in the record. There was no post mortem examination.

The defendant's wife testified that the glass in front of the driver's seat was broken out, but that in front of the passenger's side, the glass was still intact.

It was testified that Robinson could drive a car and had driven a car in the past. There was some testimony that Robinson was a man of careful and cautious habits. This was rebutted in part by the testimony of police officers who testified that they had known Robinson for several years; that he used liquor frequently; had been arrested several times for intoxication; had a reputation for excessive use of intoxicating liquors and was what they called a weekend man. There was no evidence that either Robinson or the defendant had been drinking or that any liquor was found in the car. There was evidence that the Workman car was weaving from side to side on the road, and the speed of the Workman car was estimated at something over 50 miles per hour, based upon the speed of the car it passed, and one following.

The administrator of the estate of James Robinson, deceased, brought suit against the defendant William F. Workman, claiming Robinson was a guest; that his death was the result of alleged wilful and wanton misconduct on the part of the defendant by reason of driving on the wrong side of the road, excessive speed, and by causing his automobile to come into collision with the car driven by Karolyn Woodcock. The cause was tried before a jury and the jury found the defendant guilty and assessed damages at $20,000. From that verdict and the judgment entered thereon, the defendant appeals to this court.

The defendant raises four questions. First, that there is no evidence that the defendant was driving the car in question. Second, that there was no evidence tending to prove that the defendant, if driving, was

46

guilty of any wilful or wanton conduct, or that the deceased was free from wilful and wanton misconduct. Third, that the verdict of the jury was against the manifest weight of the evidence and fourth, that the trial court erred in giving plaintiff's instructions Nos. 17, 21, 22, 24 and 25.

Taking up the first point raised by the defendant, it must be conceded that there is no direct evidence to show that the defendant was driving the car owned by Workman. So far as the evidence is concerned, Robinson could have been driving and Workman riding alongside. In fact, the evidence would tend to support this theory. When found, Robinson was at the front of the car and Workman to his rear. Workman was cut about the chin and foot but otherwise not marked up, while Robinson was badly cut about the face and head. The windshield in front of the driver was broken out, which could account for the cuts on Robinson's face. All this however, is purely circumstantial and the fact remains that there is no substantial evidence as to which one of the two was driving. But, the plaintiff contends, the answer of the defendant admits that Workman was driving. Paragraph 6 of the complaint says: "That at said time and place plaintiff's intestate, the said James Robinson, was riding in said motor vehicle or automobile as a guest of the said defendant." Paragraph 6 of the answer admits the guest relationship in the following words: "This defendant admits the allegations of paragraph 6 of said complaint." The guest relationship being admitted, does this by implication admit that the defendant was driving? We do not think so. "Where the circumstances surrounding the parties indicate that the considerations inducing the defendant to extend transportation to the plaintiff were primarily those of hospitality or sociability, it has been held that the mere fact that the plaintiff assisted with the driving, even where such assistance was contemplated from the beginning of the trip, would

47

be insufficient to change the status of the plaintiff from that of a guest to that of a passenger." American Law Reports, Annotated, 10 A.L.R.2d 1364. Here there was no evidence as to the reason why Robinson was in the car with the defendant. He may have been driving, at his own request, or at the request of the defendant.

The cases cited by the plaintiff do not resolve this question. A guest has been defined as "one who the operator of a motor vehicle invites to ride with him as an incident of hospitality, companionship or the like without financial or other return except such casual benefits as may be extended as a part of ordinary courtesies." Dirksmeyer v. Barnes, 2 Ill.App.2d 496 at page 502. We understand the use of the word "operator" to be synonymous with "owner." Here the one person who could testify as to who was driving, namely, the defendant William F. Workman, was by objection on the part of the plaintiff barred from testifying as to what happened. That is the law in Illinois, and neither party can complain. In the case of Ashby v. Irish, 2 Ill.App.2d 9, the defendant had stated that he was the driver of the car. There was other evidence to show that the defendant was the driver, and the court in that case held that there was substantial evidence tending to prove that the defendant was the driver. That substantial evidence is lacking here. In Jacobs v. Illinois Nat. Bank & Trust Co., 345 Ill. App. 30, the court held that the question of who was driving the car was a question of fact and like any other fact might be proved by circumstantial as well as by direct evidence; that a greater or less probability, leading, on the whole, to a satisfactory conclusion is all that is required to establish controverted facts by circumstantial evidence and that only where there is a complete absence of probative facts to support that conclusion reached does a reversible error occur. Here, a careful analysis of the evidence fails to show any probative facts upon which a conclusion that the defendant was driving could be

48

based. We must therefore reach the conclusion that the plaintiff failed to prove that the defendant was driving the Workman car. On that conclusion, it is immaterial whether the issue was contested or not at the trial. However, we are inclined to agree with the defendant, that if it was an issue in the trial, the plaintiff cannot now contend that it was admitted by the pleadings and is of necessity an admitted fact.

We think the conclusion reached by this court that there is no proof that the defendant was driving the car as a practical matter also concludes the question as to wilful and wanton conduct on the part of the defendant, or the lack of wilful and wanton conduct on the part of the plaintiff's intestate. If the defendant was not driving the car, he could not be guilty of wilful and wanton misconduct in the operation of the car, in the absence of proof that he was directing, controlling or managing the driving. The weaving about on the road and the collision might impute misconduct on the part of the driver, whoever he was. But again, there is a lack of sufficient proof to show that the defendant was guilty of such wilful and wanton misconduct, and a lack of sufficient proof to show that the plaintiff's intestate was not guilty of such wilful and wanton misconduct. As was said in the case of Jacobs v. Illinois Nat. Bank & Trust Co., 345 Ill. App. 30, "Before this plaintiff is entitled to recover he must prove the material allegations of his complaint. The burden is upon him to prove by a preponderance of the evidence, direct or circumstantial, that his intestate was riding in an automobile driven by Yardley as a guest-passenger, that plaintiff's intestate had no control over the driver of the car or control over its operation and that the driver of the car in which he was a passenger was guilty of wilful and wanton misconduct and that he, plaintiff's intestate, was free from wilful and wanton misconduct which proximately contributed to his death." In that case, as in this case, the answer does

49

not appear in the record. All is speculation and conjecture. There is no substantial evidence in the record of this case to prove who was driving; whether Robinson was a guest passenger or a passenger for hire. There is nothing to prove that plaintiff's intestate did anything to prevent the accident or that the accident was not in fact due to interference by the plaintiff's intestate with the driver, if Workman was the driver. The mere facts of the collision and the weaving on the road, are not enough to answer these questions, or to support the allegations in the complaint. Speed or excessive speed is a circumstance which may be taken into consideration bearing upon the presence of wilful and wanton misconduct under certain circumstances. Signa v. Alluri, 351 Ill. App. 11. Here, the evidence fails to show excessive speed under the circumstances. The collision itself, in the absence of other proof is not enough. The weaving about on the road, might be sufficient if there was some evidence as to who was driving and so forth.

 Although the courts have had occasion to define wilful and wanton misconduct in many cases, it has always been done in general terms and with no attempt to indicate that any particular type of misconduct may be said to be wilful and wanton under all circumstances. Misconduct which falls within the category designated as being wilful and wanton is generally said to be conduct exhibiting a reckless disregard for the safety of others or conduct under circumstances indicating a conscious indifference to its consequences. Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569; Provenzano v. Illinois Cent. R. Co., 357 Ill. 192; Bartolucci v. Falleti, 382 Ill. 168; Ashby v. Irish, 2 Ill.App.2d 9. But in all the cases, it has been held that the burden of proving that the driver's conduct was wilful and wanton is one that must be discharged by greater weight or preponderance of evidence and cannot be made to rest upon speculation or conjecture or

circumstances from which evidence of freedom from such wilful and wanton misconduct might be equally compatible with that of guilt of such conduct. Tygett v. Penry, 344 Ill. App. 427, citing Pure Torpedo Corp. v. Nation, 327 Ill. App. 28, 39–41.

In this case, the burden was upon the plaintiff to prove the following matters: 1. That the defendant was driving. 2. That the defendant was guilty of some act of misconduct, showing a reckless disregard for the safety of others. 3. That the plaintiff's intestate was free from any such misconduct. 4. That the act or acts complained of was the proximate cause of the death of the plaintiff's intestate. The burden of proving these matters has not been met.

We are impelled to hold that the verdict of the jury was against the manifest weight of the evidence. This being our view, it is unnecessary to pass on the instructions objected to. If the case is tried again any error therein will no doubt be avoided on a new trial.

We are reluctant to reverse a jury verdict which has been approved by the trial court, but this appears to us to be a case where it is demanded.

Judgment reversed and cause remanded for a new trial.

Reversed and remanded.